UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
NEW ALBANY DIVISION

| | |
|---|---|
| WILLIAM M. LEE, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Case No. 4:22-cv-00053-TWP-KMB |
| ) | |
| B. BIRD, Correction Officer, ) | |
| Myers, Sgt., Correction Officer, ) | |
| D. Lock, Sgt., Correction Officer, ) | |
| Previtera, Correction Officer, ) | |
| ) | |
| Defendants. ) | |

**ORDER ON DEFENDANTS' MOTION FOR SUMMARY JUDGMENT AND
ON PLAINTIFF'S CROSS MOTION FOR SUMMARY JUDGMENT**

This matter is before the Court on Defendants Benjamin Bird's ("Officer Bird"), Kaitlin Myers' ("Sgt. Myers"), David Lock's ("Sgt. Lock"), and Jordan Previtera's ("Officer Previtera") (collectively, "Defendants"), Motion for Summary Judgment, (Dkt. 37), and Plaintiff William M. Lee's ("Mr. Lee") cross Motion for Summary Judgment (Dkt. 48). Mr. Lee is a prisoner at the Floyd County Jail in New Albany, Indiana. He alleges in this civil action that the Defendants used excessive force against him and failed to provide him medical treatment for his injuries. Mr. Lee moved for an extension of time to respond to the Defendants' motion and the Court granted the motion. (Dkt. 46, Dkt. 47.) But instead of a response, Mr. Lee filed a motion for summary judgment on May 19, 2023. (Dkt. 48.) Because it was filed after the deadline to move for summary judgment, and he did not seek an extension of that deadline, the Court treats his motion as a response in opposition to Defendants' motion. For the reasons below, Defendants' Motion for Summary Judgment is **granted in part and denied in part**. The **Clerk is directed to** terminate Mr. Lee's Motion at Dkt. 48.

## I.      STANDARD OF REVIEW

A motion for summary judgment asks the court to find that a trial is unnecessary because there is no genuine dispute as to any material fact and, instead, the movant is entitled to judgment as a matter of law. *See* Federal Rule of Civil Procedure 56(a). When reviewing a motion for summary judgment, the court views the record and draws all reasonable inferences from it in the light most favorable to the nonmoving party. *Khungar v. Access Cmty. Health Network*, 985 F.3d 565, 572–73 (7th Cir. 2021). It cannot weigh evidence or make credibility determinations on summary judgment because those tasks are left to the fact-finder. *Miller v. Gonzalez*, 761 F.3d 822, 827 (7th Cir. 2014). A court only has to consider the materials cited by the parties, *see* Fed. R. Civ. P. 56(c)(3); it need not "scour the record" for evidence that might be relevant. *Grant v. Trs. of Ind. Univ.*, 870 F.3d 562, 573−74 (7th Cir. 2017) (cleaned up).

"[A] party seeking summary judgment always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett,* 477 U.S. 317, 323 (1986). "[T]he burden on the moving party may be discharged by 'showing'—that is, pointing out to the district court—that there is an absence of evidence to support the nonmoving party's case." *Id*. at 325.

Whether a party asserts that a fact is undisputed or genuinely disputed, the party must support the asserted fact by citing to particular parts of the record, including depositions, documents, or affidavits. Fed. R. Civ. P. 56(c)(1)(A). Failure to properly support a fact in opposition to a movant's factual assertion can result in the movant's fact being considered undisputed, and potentially in the grant of summary judgment. Fed. R. Civ. P. 56(e).

2

This case relates largely to Lee's allegations that Defendants used excessive force against him on February 23, 2022. The summary judgment record contains video of the incident. The Seventh Circuit has repeatedly cautioned against relying too heavily on a video at summary judgment, especially as here, when the video is grainy and portions have no audio. *See Kailin v. Village of Gurnee*, 77 F.4th 476, 481 (7th Cir. 2023) (collecting cases where video was not dispositive and noting that "[i]t should be considered a rare case where video evidence leaves no room for interpretation by a fact finder.").

## II.    FACTUAL BACKGROUND

Because Defendants have moved for summary judgment under Rule 56(a), the Court views and recites the evidence in the light most favorable to Mr. Lee and draws all reasonable inferences in his favor. *Khungar*, 985 F.3d at 572–73.

At all times relevant to his Complaint, Mr. Lee was a pretrial detainee at the Floyd County Jail. On February 23, 2022, jail officers performed a search of Mr. Lee's cell block. Officers ordered all inmates to lie on the floor. Defendant Sgt. Myers instructed the inmates to remain quiet and to collect their towel, wash cloth, and jumpsuit, and exit the block when they were directed to do so. (Dkt. 39-8 at 2.) Because officers are outnumbered by inmates, the requirement that inmates remain quiet is an important safety measure. *Id*.

An inmate began to speak loudly to distract officers from the search. *Id*. at 3. Sgt. Lock placed the inmate in handcuffs and removed him from the block. (Dkt. 39-9 at 2.) At this point, Defendants' version of events differs from Mr. Lee's version.

Mr. Lee attests that he was sleeping in his bunk when the search began. (Dkt. 48 at 2.) He moved to the floor as fast as he could.

> [B]ut before you know it Officer B. Bird can be seen putting his hands on me and sna[t]ching me out of my bunk to the floor. I roll on my side because my back was

3

> [in] intense pain[.] I was rubbing it and moaning in pain. I made a remark under my breath saying [,] "they can't be grabbing on me like that I'm already hurt!"

*Id*.  Sgt. Myers then told Officer Bird to remove Mr. Lee.  Mr. Lee asserts that Sgt. Lock then jumped on him.  Mr. Lee states that he was already in pain and the way they were moving him made it worse.  He asserts he yelled out "let me do it" repeatedly because he was trying to comply but doing so hurt.  *Id*.  His jumpsuit fell from his hips "preventing [him] from being able to walk."  *Id*.  He tried to walk, but Officer Bird and Sgt. Lock slammed him to the floor on his head.  *Id*.

Defendants' affidavits establish the following version of events.  Mr. Lee spoke out after the first inmate was cuffed and removed from the block.  When Sgt. Myers walked over to him, he shouted that he was going to sue everyone. (Dkt. 39-8 at 3.)  Sgt. Myers instructed Officer Bird to place Mr. Lee in handcuffs.  *Id*.  Officer Bird ordered Mr. Lee to place his hands behind his back, but Mr. Lee refused. (Dkt. 39-10 at 2.)  Sgt. Lock secured Mr. Lee's arms and placed him in handcuffs. (Dkt. 39-9 at 2.)

Sgt. Lock then ordered Mr. Lee to roll onto his side so Sgt. Lock and Officer Bird could assist him in standing up, but he again refused to comply with the order and began to yell. (Dkt. 39-8 at 3; Dkt. 39-9 at 3.)  The officers stood Mr. Lee in 'escort' position with his torso leaned forward to allow them to loop their arms behind him and place their hands on his shoulders. (Dkt. 39-10 at 3.)  The officers were trained to use this position for the safety of the inmate and the officers.  *Id*.

Sgt. Lock and Officer Bird attest that Mr. Lee then refused to walk, planting his feet on the ground, and attempting to stand up straight.  *Id*.; Dkt. 39-10 at 3.  Mr. Lee attests that he was in pain and could not walk because his jumpsuit was falling from his hips. (Dkt. 48 at 2.)  Perceiving his resistance, Sgt. Lock and Officer Bird attempted to bring Mr. Lee to the ground, chest first. (Dkt. 39-9 at 3.)  But Mr. Lee tucked his head toward his chest causing his head to hit the floor.

4

*Id*. at 3-4.  Mr. Lee kicked and thrashed as Sgt. Lock and Officer Bird attempted to secure his upper body and other officers placed his legs in shackles.  *Id*. at 4.  Officer Lock then ordered Mr. Lee to roll onto his side so officers could lift him to his feet, but he again failed to comply.  *Id*.  Nevertheless, officers brought him to his feet and carried him out of the block when he refused to walk.  *Id*.  Mr. Lee attests that he was unable to comprehend the officers' orders after he was taken to the ground.  (Dkt. 48 at 2.)  Once in the hallway, Sgt. Lock and Officer Bird lowered Mr. Lee to the floor so four officers could carry him to a safety restraint chair (SRC) because he continued to thrash his body and disregard officer commands.  (Dkt. 39-9 at 4.)  Officer Previtera was not present in the cell block while Mr. Lee was being restrained, but he brought the SRC to the hallway and participated in securing Mr. Lee in the chair.  (Dkt. 39-11 at 1-3.)

Officers ordered Mr. Lee to sit in the SRC.  *Id*. at 5.  He did not comply but instead continued to yell and thrash his body about. *Id*. As other officers attempted to secure Mr. Lee in the SCR, Sgt. Lock placed his hands on Mr. Lee's jaw pursuant to his training to prevent Mr. Lee from injuring himself as he tried to bang his head.  (Dkt. 39-9 at 5.)  Mr. Lee attests that Sgt. Lock placed him in a head lock and Mr. Lee said he could not breathe with Sgt. Lock's hands on his jaw.  (Dkt. 48 at 2-3.)

Once Mr. Lee was secured in the SRC, officers transported him to a padded cell.  (Dkt. 39-9 at 5.)  Approximately two hours later, Sgt. Lock returned to the padded cell.  *Id*.  Mr. Lee agreed to comply with officer commands, and he was removed from the SRC.  *Id*. at 5-6.  Nurse Johnson evaluated Mr. Lee while he was in the SRC and after he was removed.  *Id*.  Mr. Lee suffered swelling of his head and wrist, bruising on his left knee, and broken teeth.  (Dkt. 48 at 5.)

Mr. Lee attests that he was left in the padded cell for two days.  *Id*. at 4.  He could not stand due to his injuries and was forced to urinate on himself.  *Id*. at 3.  Officer Previtera started an observational watch of Mr. Lee under Sgt. Lock's supervision.  *Id*. at 4.  During this time, no one

5

assisted Mr. Lee to the bathroom or provided him with ice for his swelling or any other medical treatment. *Id*. at 3-4. After being returned to segregation, Mr. Lee requested to be seen by medical staff and requested a wheelchair. Mr. Lee asserts that Officer Bird was sent to his cell to take him to the medical unit, but Officer Bird denied him a wheelchair, and told Mr. Lee that he would report that he had refused to be seen. *Id*. at 4-5.

The Court has reviewed the video evidence produced by Defendants. One overhead camera angle also includes audio of the beginning of the cell block search and provides a clear view of Mr. Lee. The video confirms that officers entered the cell block and ordered the inmates to lie on the floor on their stomachs and to not talk. An officer assists Mr. Lee from his bunk to the floor, where Mr. Lee lies on his side for some time. After the initial entrance of the officers, the cell block is quiet, and the officers and inmates are calm. When one inmate begins to talk loudly, he is handcuffed and escorted out of the block without further incident.

Sgt. Myers instructs individual inmates to gather their towels, washcloths, and jumpsuits and exit the cell block. About two and a half minutes into the video, it begins to skip making it difficult to hear the audio. But Mr. Lee begins to yell when officers attempt to place him in handcuffs to remove him from the cell block. From this point on, a different camera provides a better view of the events but provides no audio. Mr. Lee's jumpsuit falls down his legs as Defendants stand him up. Mr. Lee appears to raise his arms behind his back in an awkward position, lock his legs, and plant his feet on the ground rather than attempt to walk.[1] Sgt. Lock and Officer Bird attempt to force Mr. Lee to move but he does not. They next force him to the floor and his head hits the floor because he has it tucked to his chin. Mr. Lee flips his legs over his

---

[1] The Court notes that the video evidence depicts Sgt. Lock removing another inmate using the same escort position as he and Officer Bird attempted with Mr. Lee. That inmate's arms are not thrust in the air but instead stay behind his back with the officers' arms interlacing his.

6

body and continues to yell and move his body as officers attempt to subdue him. He appears to kick his legs toward the officer at his feet. The officers then apply leg shackles and bring Mr. Lee to a standing position. As the officers escort him out of the block, Mr. Lee appears to take a step or two and then drags his feet on the floor.

Additional video evidence shows Mr. Lee being placed in the SRC. He appears calm and cooperative until Sgt. Lock places his hands on Mr. Lee's jawline. When Mr. Lee resists, Sgt. Lock then places his hand over Mr. Lee's mouth and nose, which appear bloodied. Although there is no audio, Mr. Lee can be seen yelling and moving around as officers restrain his arms and legs to the SRC. Sgt. Lock briefly puts his arm around Mr. Lee's neck. Officers place a spit mask over Mr. Lee's face and take him to a padded cell. An officer removes the spit mask to give Mr. Lee water and then leaves Mr. Lee alone in the cell. There is no video evidence of the officers having any further interactions with Mr. Lee, but he attests that Officer Previtera initiated a two-day observational watch of the padded cell while Mr. Lee was unable to stand and repeatedly asked for medical treatment. (Dkt. 48 at 4.) He further attests that Sgt. Lock supervised Officer Previtera. *Id*. Finally, he attests that Officer Bird refused to take him to medical after he was released from observation and placed in segregation. *Id*. at 5.

## III. DISCUSSION

### A. Excessive Force Claim

A pretrial detainee "possesses a constitutional right 'to be free from punishment.'" *Williamson v. Stirling*, 912 F.3d 154, 173 (4th Cir. 2018) (quoting *Bell v. Wolfish*, 441 U.S. 520, 535 (1979)); *see also Hardeman v. Curran*, 933 F.3d 816, 821 (7th Cir. 2019) ("Pretrial detainees are in a different position, because their detention is unrelated to punishment.").

Whether a correctional officer was objectively reasonable in his use of force depends on the facts and circumstances of each case. *Kingsley v. Hendrickson*, 576 U.S. 389, 397 (2015). "A court must make this determination from the perspective of a reasonable officer on the scene," and must take into account concerns about institutional security. *Id*. Some factors the court may consider when assessing the reasonableness of force are:

> the relationship between the need for the use of force and the amount of force used; the extent of the plaintiff's injury; and effort made by the officer to temper or to limit the amount of force; the severity of the security problem at issue; the threat reasonably perceived by the officer; and whether the plaintiff was actively resisting.

*Id*. Considering these factors, a reasonable juror could conclude that Defendants' actions were objectively unreasonable. For safety reasons, officers required inmates to remain silent as they conducted a search of the cell block. Defendants attest that Mr. Lee yelled that he was going to sue everyone, but the available audio evidence does not confirm their assertion. Mr. Lee attests that he mumbled under his breath. A juror believing Mr. Lee could conclude that there was no reason to use force against him. The parties dispute whether Mr. Lee resisted being handcuffed and the video evidence does not clearly support either side's version of events.

The parties dispute whether the officers were aware of Mr. Lee's back problems before they interacted with him during the cellblock search. A reasonable juror believing Mr. Lee's testimony that the officers were aware he had back problems could conclude that the officers did

8

not reasonably limit the amount of force they used when escorting Mr. Lee from the block. Although at times the video depicts Mr. Lee actively resisting, other portions of the officers' use of force cannot be said to be objectively reasonable as a matter of law. Thus, Defendants are not entitled to summary judgment on this claim.[2]

**B.     Qualified Immunity**

Defendants argue that they are entitled to qualified immunity on Mr. Lee's excessive force claims because they are not aware of any clearly established law requiring officers to allow an inmate to disregard orders and remain non-compliant during a cell block search. (Dkt. 38 at 29.)

"[Q]ualified immunity shields officials from civil liability so long as their conduct 'does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" *Mullenix v. Luna*, 577 U.S. 7, 11 (2015) (quoting *Pearson v. Callahan*, 555 U.S. 223, 232 (2009)). "To overcome the defendant's invocation of qualified immunity, [a plaintiff] must show both (1) that the facts make out a constitutional violation, and (2) that the constitutional right was 'clearly established' at the time of the official's alleged misconduct." *Abbott v. Sangamon Cty., Ill.*, 705 F.3d 706, 713 (7th Cir. 2013). This "clearly established" standard ensures "that officials can 'reasonably . . . anticipate when their conduct may give rise to liability for damages.'" *Reichle v. Howards*, 566 U.S. 658, 664 (2012) (quoting *Anderson v. Creighton,* 483 U.S. 635, 646 (1987)).

To be "clearly established," a constitutional right "must have a sufficiently clear foundation in then-existing precedent." *District of Columbia v. Wesby*, 583 U.S. 48, 63 (2018). Given this

---

[2] This includes failure-to-protect claims against the Defendants to the extent the officers failed to intervene in their fellow officers' use of force. *See Guzman v. Sheahan*, 495 F.3d 852, 857 (7th Cir. 2007) (officers can be held liable when they know of a substantial risk of harm to an inmate but fail to take appropriate steps to protect him).

...

emphasis on notice, clearly established law cannot be framed at a "high level of generality." *Ashcroft v. al-Kidd*, 563 U.S. 731, 742 (2011). "A rule is too general if the unlawfulness of the officer's conduct 'does not follow immediately from the conclusion that [the rule] was firmly established.'" *Wesby*, 583 U.S. at 64 (quoting *Anderson*, 483 U.S. at 641). While "a case directly on point" is not required, "precedent must have placed the . . . constitutional question beyond debate." *White v. Pauly*, 580 U.S. 73, 79 (2017) (cleaned up). Put slightly differently, a right is clearly established only if "every reasonable official would have understood that what he is doing violates that right." *Taylor v. Barkes*, 575 U.S. 822, 825 (2015). "The Supreme Court's message is unmistakable: Frame the constitutional right in terms granular enough to provide fair notice because qualified immunity 'protects all but the plainly incompetent or those who knowingly violate the law.'" *Campbell v. Kallas*, 936 F.3d 536, 546 (7th Cir. 2017) (quoting *Kisela v. Hughes*, 138 S. Ct. 1148, 1152 (2018) (quotation marks omitted)). Qualified immunity thus "balances two important interests — the need to hold public officials accountable when they exercise power irresponsibly and the need to shield officers from harassment, distraction, and liability when they perform their duties reasonably." *Pearson,* 555 U.S. at 231.

Defendants' characterization of the qualified immunity question assumes that Mr. Lee was non-compliant, but that is a disputed question of fact. At summary judgment, the Court cannot ignore Mr. Lee's sworn statement that he only mumbled something under his breath and did not resist being handcuffed. Defendants cannot ignore his testimony either. Mr. Lee attests that they knew of his back problem which would have explained why he struggled in pain when he was pushed from his bunk to the floor and later forced into various positions by Defendants. Given this context, it is not clear whether Mr. Lee was resisting commands or struggling to comply despite his bad back.

10

It is clearly established that "[t]he Eighth Amendment prohibits unnecessary and wanton infliction of pain, thus forbidding punishment that is 'so totally without penological justification that it results in the gratuitous infliction of suffering.'" *Leiser v. Kloth*, 933 F.3d 696, 703 (7th Cir. 2019) (quoting *Calhoun v. DeTella*, 319 F.3d 936, 939 (7th Cir. 2003), quoting *Gregg v. Georgia*, 428 U.S. 153, 173 (1976)). As a pretrial detainee, Mr. Lee was protected from any punishment, let alone unjustified and gratuitous infliction of pain. Only a plainly incompetent correctional officer would think it was constitutional to slam to the floor a cooperating pretrial detainee suffering from back problems.

Because it was clearly established that it is unconstitutional to gratuitously inflict pain on a pretrial detainee without penological justification, and because a genuine issue of fact remains as to whether Defendants' use of force was objectively reasonable, summary judgment on the grounds of qualified immunity is not appropriate. *Isby v. Brown,* 856 F.3d 508, 530 (7th Cir. 2017). Accordingly, Defendants are not entitled to judgment as a matter of law based on qualified immunity.

C.     **Medical Care Claim**

A pretrial detainee's unconstitutional medical care claim, brought under the Due Process Clause of the Fourteenth Amendment, is analyzed according to the objective unreasonableness inquiry laid out in *Kingsley v. Hendrickson*, 576 U.S. 389 (2015). *Miranda v. County of Lake*, 900 F.3d 335, 352 (7th Cir. 2018). A defendant violates a pretrial detainee's due process right to constitutionally acceptable medical care if:

> (1) there was an objectively serious medical need; (2) the defendant committed a volitional act concerning the [plaintiff's] medical need; (3) that act was objectively unreasonable under the circumstances in terms of responding to the [plaintiff's] medical need; and (4) the defendant act[ed] "purposefully, knowingly, or perhaps even recklessly" with respect to the risk of harm.

*Gonzalez v. McHenry County, Ill.*, 40 F.4th 824, 828 (7th Cir. 2022) (quoting *Miranda*, 900 F.3d at 353−54). "This standard requires courts to focus on the totality of facts and circumstances faced by the individual alleged to have provided inadequate medical care and to gauge objectively—without regard to any subjective belief held by the individual—whether the response was reasonable." *Williams v. Ortiz*, 937 F.3d 936, 942 (7th Cir. 2019) (cleaned up).

Here, Mr. Lee attests that Officer Previtera initiated a two-day observational watch of Mr. Lee while he was unable to stand and repeatedly asked for medical treatment. (Dkt. 48 at 4.) He further attests that Sgt. Lock supervised Officer Previtera. *Id*. Finally, he attests that Officer Bird refused to take him to medical after Mr. Lee was released from observation and placed in segregation.

There is no evidence in the record that either Sgt. Lock or Sgt. Myers had any personal involvement in Mr. Lee's medical care after the cell block search. "'To recover damages under § 1983, a plaintiff must establish that a defendant was personally responsible for the deprivation of a constitutional right.'" *Whitfield v. Spiller*, 76 F.4th 698, 706 (7th Cir. 2023) (quoting *Gentry v. Duckworth*, 65 F.3d 555, 561 (7th Cir. 1995)). Thus, Sgts. Lock and Myers are entitled to summary judgment on Mr. Lee's medical care claims.

But reasonable jurors could conclude that Officers Previtera's and Bird's actions, and lack of action, as to Mr. Lee's medical needs were objectively unreasonable. Defendants argue that Mr. Lee has not presented medical records verifying his physical injuries. (Dkt. 38 at 27.) But Mr. Lee's testimony that he experienced swelling and bruising, broken teeth, and could not stand to use the restroom, is admissible evidence from which a juror could conclude that Mr. Lee was

suffering from an objectively serious medical condition. Therefore, Officers Previtera and Bird are not entitled to summary judgment on Mr. Lee's medical care claims.[3]

## IV. CONCLUSION

Defendants' Motion for Summary Judgment, Dkt. [37], is **GRANTED** as to Mr. Lee's medical care claims against Sgts. Lock and Myers. The Motion is **DENIED** as to Mr. Lee's excessive force and failure to protect claims against all four Defendants, and his medical care claims against Officers Previtera and Bird. No partial final judgment shall enter at this time. The **Clerk is directed to terminate** Mr. Lee's cross Motion for Summary Judgment, Dkt. [48].

Because it is the Court's preference that Mr. Lee be represented by counsel for trial or any potential settlement conference, the Court will attempt to recruit counsel to represent him. Mr. Lee shall have **through Thursday, February 29, 2024**, by which to file a motion for recruitment of counsel or object to the recruitment of counsel on his behalf. The **Clerk is directed** to include the motion for counsel form with his copy of this Order. Once counsel has been recruited, the Magistrate Judge is requested to set a status conference to discuss what preparations are needed for trial and to schedule a settlement conference.

**SO ORDERED.**

Date: 2/14/2024

Hon. Tanya Walton Pratt, Chief Judge
United States District Court
Southern District of Indiana

---

[3] Defendants did not assert qualified immunity as to Mr. Lee's medical care claims.

DISTRIBUTION:

William M. Lee, #65031
FLOYD COUNTY JAIL
Inmate Mail/Parcels
P.O. Box 1406
New Albany, Indiana 47150

R. Jeffrey Lowe
KIGHTLINGER & GRAY, LLP (New Albany)
jlowe@k-glaw.com

Magistrate Judge Kellie M. Barr